1   Jeremy E. Shulman (# 257582)
       jshulman@afrct.com
2   ANGLIN, FLEWELLING, RASMUSSEN,
       CAMPBELL & TRYTTEN LLP
3   199 South Los Robles Avenue, Suite 600
    Pasadena, California 91101-2459
4   Tel:  (626) 535-1900 | Fax:   (626) 577-7764

5   Attorneys for Defendant
    WELLS FARGO BANK, N.A.,
6   successor by merger with Wells Fargo
    Bank Southwest, N.A., f/k/a
7   Wachovia Mortgage, FSB, f/k/a
    World Savings Bank, FSB ("Wells
8   Fargo") and Wachovia Mortgage
    Corporation ("Wachovia")

9

10                  UNITED STATES DISTRICT COURT

11                 CENTRAL DISTRICT OF CALIFORNIA

12

| | |
|---|---|
| 13   H. JAMES TAPIA, an individual, | CASE NO.: 2:15-cv-03922-DDP-AJW |
| 14              Plaintiff, | |
| 15         v. | **DECLARATION OF JEREMY E. SHULMAN IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND** |
| 16   WELLS FARGO BANK, N.A., a South Dakota financial institution; | |
| 17   WACHOVIA MORTGAGE CORPORATION, a North Carolina | |
| 18   financial institution; NDEX WEST, LLC; a Minnesota limited liability | |
| 19   company; REGIONAL TRUSTEE SERVICES CORPORATION, a | Date:   July 13, 2015 Time:   10:00 a.m. Ctrm:   3 |
| 20   California financial institution; and DOES 1-100, Inclusive, | |
| 21 | |
| 22 | [Assigned to the Hon. Dean  D. Pregerson] |
| 23              Defendants. | |

24

25

26

27

28

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

I, Jeremy E. Shulman, declare:

1.      I am an attorney at law licensed to practice before this Court and am a Partner with the law firm of Anglin, Flewelling, Rasmussen, Campbell & Trytten LLP, counsel of record for WELLS FARGO BANK, N.A., successor by merger with Wells Fargo Bank Southwest, N.A., f/k/a Wachovia Mortgage, FSB, f/k/a World Savings Bank, FSB ("Wells Fargo") and Wachovia Mortgage Corporation ("Wachovia").  I make this declaration supporting Wells Fargo's and Wachovia's opposition to plaintiff's motion to remand.

2.      Attached here as Exhibit A is a true and correct copy of A Deed of Trust, dated in July 2005, regarding plaintiff and Wells Fargo's predecessor World Savings Bank (the "Loan Deed of Trust").

3.      Attached here as Exhibit B is a true and correct copy of an Open End Deed of Trust for a $30,000 home equity line of credit regarding plaintiff and Wells Fargo's predecessor World Savings Bank (the "ELOC Deed of Trust").

4.      In August 2010, nonparty Regional Service Corporation ("RSC") recorded a Notice of Default and Election to Sell regarding the ELOC Deed of Trust that was later rescinded by RSC in August 2011.  True and correct copies of the Notice and the Rescission are attached as Exhibits C and D. There have been no recorded notices as to the ELOC Deed of Trust since.

5.      In September 2012, trustee NDEX West, LLC ("NDEX") recorded a Notice of Default and Election to sell regarding the Loan Deed of Trust, a true and correct copy of which is attached here as Exhibit E.

6.      In April 2015, NDEX recorded a Notice of Trustee's Sale regarding the Loan Deed of Trust, a copy of which is attached here as Exhibit F.

7.      I conducted two names searches on the website for the California Secretary of State for any registration of Regional Trustee Services Corporation ("RTSC") with the State of California.

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

8.      I first entered "Regional Trustee Services," which returned no records.  I next entered "Regional Trustee Services Corporation," which also returned no records.  True and correct copies of the searches and results are attached here as <u>Exhibit G</u>.

9.      In July 2014, RTSC merged with an entity known as Regional Service Corporation into a corporation named "Old RTSC Corp."  True and correct copies of the merger documents with the Washington Secretary of State are attached here as <u>Exhibit H</u>.

10.     I searched the current registration of Old RTSC Corp. with the Washington Secretary of State.  A true and correct copy of that search result is attached here as <u>Exhibit I</u> reflecting that Old RTSC Corp. was incorporated in Washington and is no longer active.

11.     Upon information and belief, prior to the current wind down of RTSC and Old RTSC Corp., RTSC maintained its principle place of business in Seattle, Washington at 616 1st Avenue, as reflected on the website of affiliate entity RTS Pacific, Inc.  A true and correct copy of the front webpage for RTS Pacific, Inc. is attached here as <u>Exhibit J</u>.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

12.     In March 2015, the Superior Court in King County Washington issued an order pursuant to the Revised Code of Washington (RCW) § 7.60.110, extending an automatic stay of any action against Old RTSC Corp. in connection with an ongoing receivership proceeding.  A true and correct copy of the March 27, 2015 order is attached here as <u>Exhibit K</u>.  Upon information and belief, plaintiff has not obtained any relief from the order attached as <u>Exhibit K</u>.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.  If called upon to testify to the foregoing, I would and could competently testify thereto.  Executed on this 22nd day of June, 2015, in Pasadena, California.

_/s/ Jeremy E. Shulman_
Jeremy E. Shulman

EXHIBIT A

 

**This page is part of your document - DO NOT DISCARD**

**05 1830162**

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
**08/02/05 AT 08:00am**

# TITLE(S) :





L E A D     S H E E T

FEE

| FEE $ 65ª JJ |
|---|
| DAF $ ¼ª |
| C-20 |

2T
18

D.T.T.

NOTIFICATION SENT $4



CODE
20

CODE
19

CODE
9_____

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**      **Number of AIN's Shown**



**THIS FORM IS NOT TO BE DUPLICATED**

15D86042

8/2/05

ALLIANCE TITLE COMPANY

RECORDING REQUESTED BY:
WORLD SAVINGS BANK


WHEN RECORDED MAIL TO:
WORLD SAVINGS BANK
FINAL DOCUMENTATION
CLOSING DEPARTMENT
P.O. BOX 659548
SAN ANTONIO, TX 78265-9548

05 1830162

LOAN NUMBER: 0040601692

NOTE AMOUNT: $273,350.00

ASSESSOR'S IDENTIFICATION #:

FOR RECORDER'S USE ONLY

# DEED OF TRUST

**THIS IS A FIRST DEED OF TRUST WHICH SECURES A NOTE WHICH CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, FREQUENCY AND AMOUNT OF PAYMENTS AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES AND DEFERRED INTEREST). AT LENDER'S OPTION THE SECURED NOTE MAY BE RENEWED OR RENEGOTIATED. THE SECURED NOTE PROVIDES FOR MONTHLY PAYMENTS OF PRINCIPAL AND INTEREST.**

**THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS DEED OF TRUST IS $341,687.50 WHICH IS 125% OF THE ORIGINAL PRINCIPAL NOTE AMOUNT.**

I.   **DEFINITIONS OF WORDS USED IN THIS DEED OF TRUST**
     **(A) Security Instrument.** This Deed of Trust, which is dated **July 26, 2005,** will be called the "Security Instrument."

     **(B) Borrower. H. JAMES TAPIA, AN UNMARRIED MAN** sometimes will be called "Borrower" and sometimes simply "I" or "me."

     **(C) Lender. WORLD SAVINGS BANK, FSB, ITS SUCCESSORS AND/OR ASSIGNEES,** will be called "Lender." Lender is a **FEDERAL SAVINGS BANK,** which is organized and exists under the laws of the United States. Lender's address is **1901 Harrison Street, Oakland, CA 94612** .

SD001A (2004-03-2)              DEED OF TRUST-ADJUSTABLE          CA
DEFERRED INTEREST                      Page 1

003

LENDER'S USE ONLY

0040601692

**(D) Note.** The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals, substitutions and modifications thereof, will be called the "Note." The Note shows that I owe Lender the original principal amount of U S. **$273,350.00**, plus accrued and deferred interest and such other amounts as stated in the Note. I have promised to pay this debt in regularly scheduled periodic payments as provided in the Note and to pay the debt in full by **August 15, 2035** ("Maturity Date").

**(E) Property.** The property that is described below in Section III entitled "Description of the Property" will be called the "Property."

**(F) Sums Secured.** The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured."

**(G) Person.** Any person, organization, governmental authority or other party will be called "Person."

**(H) Trustor, Beneficiary, Trustee.** Borrower is the "Trustor," Lender is the "Beneficiary" and **Golden West Savings Association Service Co., A California Corporation** is the "Trustee."

## II.    BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY

I irrevocably grant and convey the Property to the Trustee, in trust for Lender, with a power of sale subject to the terms of this Security Instrument  This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust and to trustees of a deed of trust  I am giving Lender and Trustee these rights to protect Lender from possible losses that might result if I fail to:

(i)    pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender;

(ii)    pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property; and

(iii)    keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender.

## III.    DESCRIPTION OF THE PROPERTY

I give Trustee rights in the Property described below

(i)    The Property which is located at **746 SMOKEWOOD LN, SAN DIMAS, CA 91773-3667** The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument This Property is called the "Described Property."

(ii)    All buildings and other improvements that are located on the Described Property;

EXHIBIT A to Shulman Decl. iso
Oppn for Motion for Remand - Page 6

8/2/05

0040601692

(iii)    All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Property;

(iv)    All rents or royalties and other income from the Described Property;

(v)    All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property,

(vi)    All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property;

(vii)    All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section,

(viii)    All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future,

(ix)    All replacements of or additions to the property described in subsections (ii) through (viii) of this Section; and

(x)    All of the amounts that I pay to Lender under Paragraph 2 below

## IV.    BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (i) I lawfully own the Property; (ii) I have the right to grant and convey the Property to Trustee; and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself and the Trustee has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

### COVENANTS

I promise and I agree with Lender as follows:

### 1.    BORROWER'S PROMISE TO PAY

I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes.

### 2.    PAYMENTS FOR TAXES AND INSURANCE

#### (A)    Borrower's Obligations

I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any)

05 1830162

EXHIBIT A to Shulman Decl. iso
Oppn for Motion for Remand - Page 7

8/2/05

0040601692

### (B)  Escrow Accounts

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property, (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank  Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge  However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds. Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage. I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender. If, under Paragraph 28, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

05 1830162

EXHIBIT A to Shulman Decl. iso
Oppn for Motion for Remand - Page 8

4

0040601692

3.   **APPLICATION OF BORROWER'S PAYMENTS**

Unless applicable law requires otherwise, Lender will apply each of my payments under the Secured Notes and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay prepayment charges due under the Secured Notes;

Second, to pay any advances due to Lender under this Security Instrument;

Third, to pay the amounts due to Lender under Paragraph 2 above;

Fourth, to pay interest due under the Secured Notes;

Fifth, to pay deferred interest due under the Secured Notes;

Sixth, to pay principal due under the Secured Notes;

Last, to pay late charges due under the Secured Notes.

4.   **BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS**

I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument.

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them.

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a **lien.** I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5.   **BORROWER'S OBLIGATION TO MAINTAIN INSURANCE**

At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of these insurance policies and renewals of the policies must include what is known as a **Standard Mortgagee Clause** to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

05 1830162

EXHIBIT A to Shulman Decl. iso
Oppn for Motion for Remand - Page 9

0040601692

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds.

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so

The amount paid by the insurance company is called "Proceeds." Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender or the insurance company stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds. I will notify Lender immediately of any offer to settle a claim I receive from the insurance company. I will immediately deliver any Proceeds I receive from any insurer or other persons to Lender. Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured  The 30-day period will begin when the notice is given.

If any Proceeds are used to reduce the amount of the outstanding balance of the Sums Secured, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

If Lender acquires the Property under Paragraph 28 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any Proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those Proceeds will not be greater than the total amount of the Sums Secured immediately before the Property is acquired by Lender or sold.

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

6.  **BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS**

I will keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations. I will not destroy or substantially change the Property and I will not allow the Property to deteriorate  I will keep and maintain the Property in compliance with any state or federal health and safety laws, and hazardous materials and hazardous waste laws. I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property. I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of mold, termites, dry rot, other damaging pests and infestations and hazardous waste or any other hazardous materials claim. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease  I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing

05 1830162
EXHIBIT A to Shulman Decl. iso
Oppn for Motion for Remand - Page 10

0040601692

**7.     LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY**

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (including but not limited to any manner of legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property. Lender's actions may include, without limitation, appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Paragraph 5, above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so. Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument.

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

**8.     LENDER'S RIGHT TO INSPECT THE PROPERTY**

Lender, and others authorized by Lender, may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

**9.     AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY**

I assign to Lender all my rights: (A) to proceeds of all awards or claims for damages resulting from condemnation, eminent domain or other governmental taking of all or any part of the Property, and (B) to proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other governmental taking of the Property. All of those proceeds will be paid to Lender. If I receive any such proceeds, I will immediately deliver them to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the Sums Secured have been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, Sums Secured will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds and settle the claim. Lender may then use the proceeds to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of the outstanding principal of the Secured Notes, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

05 1830162

EXHIBIT A to Shulman Decl. iso
Oppn for Motion for Remand - Page 11

8/2/05

0040601692

**10.    CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS**

**(A)    Borrower's Obligations**

Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the payments of principal and interest due under the Secured Notes or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument.

Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so  Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so

**(B)    Lender's Rights**

Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future  Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 28 below to demand that I make immediate payment in full of the Sums Secured

**11.    OBLIGATIONS OF BORROWER, CO-SIGNORS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS**

Except as provided below, if more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument  Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured.

Any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signor"). (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signor's consent.

Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument

**12.    MAXIMUM LOAN CHARGES**

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then. (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the outstanding principal balance of the Secured Notes or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Secured Notes

05 1830162

EXHIBIT A to Shulman Decl. iso
Oppn for Motion for Remand - Page 12

8/2/05

0040601692

**13.    LEGISLATION AFFECTING LENDER'S RIGHTS**

If a change in applicable law would make any provision of the Secured Notes or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument

**14.    NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT**

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at **746 SMOKEWOOD LN, SAN DIMAS, CA 91773--366.** A notice will be given to me at an alternative address if I give Lender notice of my alternative address. I may give notice to Lender of my alternative address in writing or by calling Lender's customer service telephone number provided on my billing statement   I may designate only one mailing address at a time for notification purposes. Except as permitted above for changes of address, any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section I.(C) above entitled, "Definitions of Words Used In This Deed of Trust," unless Lender gives me notice of a different address  Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

**15.    GOVERNING LAW; SEVERABILITY**

**This Security Instrument and the Secured Notes shall be governed by and construed under federal law and federal rules and regulations, including those for federally chartered savings institutions ("Federal Law") and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located.** In the event that any of the terms or provisions of this Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Secured Notes

**16.    BORROWER'S COPY**

I acknowledge the receipt of one conformed copy of the Secured Notes and of this Security Instrument.

**17.    LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY**

If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B) enter upon and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change rental agreements and leases. If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the tenants may make those rental payments to Lender without having to ask (i) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so

If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 28, I understand and agree that: (A) my right to occupy the Property ceases at the time the Property is sold, (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property; and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction  All rental payments collected by

05 1830162

EXHIBIT A to Shulman Decl. iso
Oppn for Motion for Remand - Page 13

0040601692

Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds

**18.    INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS**

An assignment is a transfer of rights to another. I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made to me by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include but are not limited to an action for breach of contract, fraud, concealment of a material fact, or for intentional or negligent acts  I assign these rights, and any and all proceeds arising from these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to the Sum Secured and this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights. At the request of Lender, I will sign any further assignments or other documents that may be necessary to enforce this assignment  I will notify Lender immediately if I believe I have the right to bring any such legal action against any persons, and will notify Lender immediately if I assert any claim or demand against or commence any legal action against any such person  If I receive any proceeds from any persons besides Lender in connection with any such claim, demand or legal action, I will immediately deliver such proceeds to Lender.

**19.    CLERICAL ERRORS**

In the event Lender at any time discovers that this Security Instrument, the Secured Notes or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to execute such documentation as Lender deems necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error.

**20.    LOST, STOLEN OR MUTILATED DOCUMENTS**

If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes

**21.    WAIVER OF STATUTE OF LIMITATIONS**

I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or Secured Notes

**22.    CAPTIONS**

The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument

**23.    MODIFICATION**

This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

**24.    CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS**

If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that:

**(A)**    If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest.

05 1830162

EXHIBIT A to Shulman Decl. iso
Oppn for Motion for Remand - Page 14

8/2/05

0040601692

**(B)**   The following are called the "Constituent Documents:" (i) The declaration or any other document which created the Project, (ii) By-laws of the Owners Association, (iii) Code of regulations for the Project; (iv) Articles of incorporation, trust instrument or equivalent document which creates the Owners Association, (v) The Project's covenants, conditions and restrictions, (vi) Other equivalent documents.

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments. If I do not pay the dues and assessments when due, Lender may, at its option, pay them. I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above

**(C)**   If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a **master** or **blanket** policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such **master** or **blanket** policy, then: (i) Lender waives the provision in Paragraph 2(B) above for the payment to Lender of the estimated yearly premium installments for hazard insurance on the Property; and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy. I shall give Lender prompt notice of any lapse in the required hazard insurance coverage. I shall provide a copy of such **master** or **blanket** policy to Lender annually.

In the event of a distribution of any hazard insurance proceeds, including without limitation any earthquake or special hazards insurance whether or not such coverage was required by Lender, in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me  If I receive any such proceeds, I will immediately deliver them to Lender or otherwise apply them as set forth above.

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage.

**(D)**   I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to. (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking; (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the **master** or **blanket** hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**25.   FUTURE ADVANCES**
At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest, to Borrower. Such future advances, with interest, will then be additional Sums Secured under this Security Instrument.

05 1830162
EXHIBIT A to Shulman Decl. iso
Oppn for Motion for Remand - Page 15

8/2/05

0040601692

**26.    AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

<u>Acceleration of Payment of Sums Secured.</u> Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

<u>Exception to Acceleration of Payment of Sums Secured.</u> If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if:

(i)    Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender;

(ii)    Lender approves the creditworthiness of the transferee in writing;

(iii)    transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

(iv)    an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the then outstanding balance of Principal and interest under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender; and

(v)    the transferee executes an assumption agreement which is satisfactory to Lender. Such assumption agreement may provide, if required by Lender, that the transferee open a deposit account with Lender or with a bank or other depository institution approved by Lender, to facilitate direct payments if direct payments are required in the Note.

The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

**27.    SUBSTITUTION OF TRUSTEE**

I agree that Lender may at any time appoint a successor trustee and that Person shall become the Trustee under this Security Instrument as if originally named as Trustee.

05 1830162

EXHIBIT A to Shulman Decl. iso
Oppn for Motion for Remand - Page 16

8/2/05

0040601692

## 28.   RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY

It will be called a "Breach of Duty" if (i) I do not pay the full amount of each regularly scheduled payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument, or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading  If there is a Breach of Duty by me, Lender may demand an immediate payment of all sums secured.

If there is a Breach of Duty by me, Lender may exercise the power of sale, take action to have the Property sold under applicable law, and invoke such other remedies as may be permitted under any applicable law

Lender does not have to give me notice of a Breach of Duty. If Lender does not make a demand for full payment of the Sums Secured upon a Breach of Duty, Lender may make a demand for full payment of the Sums Secured upon any other Breach of Duty.

If there is a Breach of Duty, Lender may also take action to have a receiver appointed to collect rents from any tenants on the Property and to manage the Property. The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property

The sale of the Property may be postponed by or at the direction of Lender. If the Property is sold, I agree that it may be sold in one parcel  I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property.

Lender will apply the proceeds from the sale of the Property in the following order  (A) to all fees, expenses and costs incurred in connection with the sale, including but not limited to trustees' and attorneys' fees, if any; (B) to all Sums Secured by this Security Instrument; and (C) any excess to the Person or Persons legally entitled to it.

## 29.   RECONVEYANCE

Upon payment of all Sums Secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all Secured Notes to Trustee. Trustee shall reconvey the Property without warranty to Borrower. Lender may charge Borrower a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (including the Trustee) for services rendered and the charging of the fee is permitted, whether expressly or by lack of express prohibition, under applicable law  If the fee charged does not exceed any maximum fee set by applicable law, the fee is conclusively presumed to be reasonable.

## 30.   STATEMENT OF OBLIGATION

Lender may collect a fee of $60.00, or such greater maximum amount as may from time to time be allowed by law, for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes

05 1830162

EXHIBIT A to Shulman Decl. iso
Oppn for Motion for Remand - Page 17

0040601692

**31.    ( X )   QUICK QUALIFYING LOAN PROGRAM**

I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly  This loan is called a "Quick Qualifying Loan." I have stated and I confirm that. (A) I do not have any other Quick Qualifying Loans with Lender; (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument; and (C) If I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin subject to the Lifetime Rate Cap stated in the Secured Notes.

**32.    ( X )   OWNER OCCUPANCY**

Lender has relied upon statements of fact which I have made to qualify for this loan. I have stated and confirm that· (A) the Property is my personal and primary residence; (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded; and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin, subject to the Lifetime Rate Cap stated in the Secured Notes

**( X )   VALUE INDICATES THAT THE PARAGRAPH APPLIES.**

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.**

05 1830162

EXHIBIT A to Shulman Decl. iso
Oppn for Motion for Remand - Page 18

8/2/05



0040601692

**BY SIGNING BELOW,** I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records

### (PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

### BORROWER(S):

_____   (Seal)
H. JAMES TAPIA

### ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT

05 1830162

**WORLD SAVINGS BANK, FSB**

# E X H I B I T "A"

## LEGAL DESCRIPTION

**LOAN NO.  0040601692**

ALL **THAT** CERTAIN REAL PROPERTY SITUATED IN THE COUNTY OF **LOS ANGELES** STATE OF **CALIFORNIA**, DESCRIBED AS FOLLOWS:

**TAPE <u>ONLY</u> THE LEGAL DESCRIPTION TO THIS PAGE.**

05  1830162

EXHIBIT A to Shulman Decl. iso
Oppn for Motion for Remand - Page 20

8/2/05



All that certain real property in the County of LOS ANGELES, State of California, described as follows:

PARCEL 1:

LOT(S) 46 OF TRACT NO. 30704, IN THE CITY OF SAN DIMAS, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 834, PAGE(S) 90 TO 92 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 2:

A NON-EXCLUSIVE EASEMENT OVER LOTS 67, 68, AND 69 (THE COMMON AREAS) OF TRACT 30704, LOT 22 OF TRACT 31499; LOTS 10, 11, 12, 13, 14, 15, 111, 112, 113, 114, AND 115 (THE COMMON AREAS) OF TRACT 31409 AND LOTS 99, 100, 101, 102 AND 103 (THE COMMON AREAS) OF TRACT 28196, FOR INGRESS, EGRESS AND THE USES AND PURPOSES SET FORTH IN THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS RECORDED SEPTEMBER 26, 1972 AS INSTRUMENT NO. 2152, AN ANY AMENDMENTS AND MODIFICATION THEREOF.

EXCEPT ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES, LYING BELOW A DEPTH OF 500 FEET, WITHOUT THE RIGHT OF SURFACE ENTRY, AS RESERVED BY LARWIN CONSTRUCTION CO., IN A DEED RECORDED FEBRUARY 27, 1980 AS INSTRUMENT NO. 80-199556.

05 1830162

EXHIBIT A to Shulman Decl. ISO
Oppn for Motion for Remand - Page 21

8/2/05

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _Los Angeles_ } ss.

On _July 27, 2005_, before me, _Graciela Gonzalez, Notary Public,_
Date       Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared _H. James Tapia —_
Name(s) of Signer(s)

GRACIELA GONZALEZ
Commission # 1558566
Notary Public - California
Los Angeles County
My Comm. Expires Apr 10, 2009

☐ personally known to me
☑ proved to me on the basis of satisfactory evidence

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Place Notary Seal Above       Signature of Notary Public

──────────── **OPTIONAL** ────────────

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

Description of Attached Document
Title or Type of Document: _Deed of Trust_

Document Date: _7/22/05_       Number of Pages: _16 pgs_

Signer(s) Other Than Named Above: _NA_

Capacity(ies) Claimed by Signer

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

© 1997 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402    Prod. No. 5907    Reorder: Call Toll-Free 1-800-876-6827

05 1830162

EXHIBIT B



▲ **This page is part of your document - DO NOT DISCARD** ▲

06 0635926

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
**03/24/06 AT 08:00am**

# TITLE(S) :

▲  ▲

L E A D   S H E E T

**FEE**

FEE $

**D.T.T.**

NOTIFICATION SENT ☉

**CODE 20**    D.A. FEE Code 20    **$ 4.00**

**CODE 19**

**CODE 9**____

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**    **Number of AIN's Shown**

**THIS FORM IS NOT TO BE DUPLICATED**

06 0635926

**RECORDING REQUESTED BY:**
WORLD SAVINGS BANK

WHEN RECORDED MAIL TO:
When recorded return to
Custom Title Solutions
2550 N Redhill Ave.
Santa Ana, CA 92705
(800)756-3524 ext. 5996

**LOAN NUMBER:** 0032302911

**ASSESSOR'S IDENTIFICATION #:**
8382010063

FOR RECORDER'S USE ONLY

OPEN END DEED OF TRUST
(SECURING FUTURE ADVANCES)
THIS DEED OF TRUST IS SECURITY FOR AN EQUITY LINE OF CREDIT AGREEMENT AND
DISCLOSURE STATEMENT MATURING NO LATER THAN APRIL 15, 2036.

THIS DEED OF TRUST (herein called the "Security Instrument") is made this 15TH, day of MARCH, 2006        , among the Trustor, H JAMES TAPIA, AN UNMARRIED MAN

(herein "Borrower"), GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO., A CALIFORNIA CORPORATION * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * (herein "Trustee"), and the Beneficiary, WORLD SAVINGS BANK, FSB, A FEDERAL SAVINGS BANK, * * * * * * * * * * * * * * * * * * * * * * * ITS SUCCESSORS AND/OR ASSIGNEES, whose addresss is 1901 HARRISON STREET, OAKLAND, CALIFORNIA 94612 * * * * * * * * * * * * (herein "Lender")

PURSUANT TO an Equity Line of Credit Agreement and Disclosure Statement dated MARCH 15, 2006 * * * * * * * (herein "Note"), Borrower may incur maximum unpaid loan indebtedness (exclusive of interest thereon) in amounts fluctuating from time to time up to the maximum principal sum outstanding at any time of THIRTY THOUSAND AND 00/100 * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * Dollars (U.S.       $30,000.00   ), which is due and payable, if not sooner paid, no later than the 30th anniversary of the opening of the Equity Line of Credit

SD823A2 (06.15.01/1-01) L23B            Page 1            CA
ELOC

LENDER'S USE ONLY

* 003 *

0032302911

**BORROWER, IN** consideration of the indebtedness herein recited and the trust herein created, irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of **LOS ANGELES** State of **CALIFORNIA** SEE EXHIBIT "A," ATTACHED HERETO AND INCORPORATED BY REFERENCE HEREIN, which has the address of **746 SMOKEWOOD LN, SAN DIMAS, CA 91773 * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *** ("Property Address")

**TOGETHER WITH** all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, fixtures and rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Security Instrument and all of the foregoing, together with said property (or the leasehold estate if this Security Instrument is on a leasehold) are hereinafter referred to as the "Property",

**TO SECURE** to Lender (a) the repayment of all sums now or hereafter advanced under the terms of the Note (including, without limitation, such sums that are advanced by Lender whether or not at the time the sums are advanced there is any principal sum outstanding under the Note), with interest, and all renewals, extensions and modifications of the Note, (including, without limitation, any modifications that increase the Credit Limit of the Note), (b) the payment of all other sums, with interest, advanced under this Security Instrument to protect the security of this Security Instrument and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.

**BORROWER COVENANTS** that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

**BORROWER AND LENDER COVENANT AND AGREE AS FOLLOWS:**

**1. Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and all other charges due under this Security Instrument and due under the Note Payments due under the Note and this Security Instrument shall be made in U.S. Dollars by check or money order. If any check or other instrument received by Lender as payment is returned to Lender unpaid, Lender may (a) charge Borrower the non-sufficient funds (NSF) fee specified in the Note or, if the Note does not specify any such fee amount, an amount not to exceed the maximum NSF charge permitted by applicable law, and (b) require that any or all subsequent payments be made by money order or with certified funds. If Borrower is in default, Lender may require Borrower to make any payment needed to cure the default by money order or with certified funds. "Certified funds" means a certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity

SD823B2 (06 15.01/1-01) L23D                Page 2            CA
ELOC

**06  0635926**

EXHIBIT B to Shulman Decl. iso
Oppn for Motion for Remand - Page 25

3/24/06

0032302911

4

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 12. Lender may return any payment(s) or partial payment(s) if the payment(s) or partial payments are insufficient to bring Borrower's obligations current. Lender may accept any payment(s) or partial payment(s) insufficent to bring the Borrower's obligations current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment(s) or partial payments in the future

**2. Funds for Escrow Items.** At loan origination or at any time thereafter, Lender may require that Borrower pay to Lender on the day periodic payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for. (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) condominium or homeowners association dues, fees and assessments, if any. These items are called "Escrow Items" Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Any waiver by Lender of Borrower's obligation to pay to Lender Funds may only be in writing

When Borrower is not required to pay for Escrow Items by paying Funds to Lender, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. If Borrower is obligated to pay Escrow Items directly and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 7 and pay such amount and Borrower shall then be obligated under Section 7 to repay to Lender any such amount. Lender may require that Borrower then pay to Lender Funds for any or all Escrow Items by a notice given in accordance with Section 12, and Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 2.

Lender may, at any time, collect and hold Funds in an amount (1) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act (12 U.S.C. 2601 et. seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they or any successor legislation or regulation might be amended from time to time ("RESPA") and (2) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires Lender to pay interest on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

SD823C2 (06.15.01/1-01) L23F
ELOC

CA

06  0635926

EXHIBIT B to Shulman Decl. iso
Oppn for Motion for Remand - Page 26

0032302911

*5*

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument Lender shall promptly refund to Borrower any Funds held by Lender. If under Section 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless the Note or applicable law requires otherwise, Lender will apply payments received under Sections 1 and 2 in the order selected by Lender.

**4. Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Security Instrument, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property (including, without limitation, all dues, fees, assessments and other charges that are imposed on the Property by any applicable condominium association, homeowners association or similar organization), which may attain a priority over this Security Instrument, and leasehold payments or ground rents, if any

Borrower agrees that Borrower will not obtain any additional advances, whether voluntary or involuntary, or allow any modification or extension of any loan secured by a lien or other encumbrance with a priority senior to this Security Instrument without the prior written consent of Lender. Violation of this provision shall constitute a default under this Security Instrument entitling Lender to all rights and remedies afforded herein, in law or equity, including but not limited to, acceleration of the loan

Borrower further agrees to deliver to Lender any notices that Borrower receives from the holder of any such senior lien or encumbrance

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be

SD823D (08 15 01/1-01) L23G                        Page 4                        CA

**06 0635926**

EXHIBIT B to Shulman Decl. iso
Oppn for Motion for Remand - Page 27

0032302911

maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the loan The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this loan, a one-time charge for flood zone determination and certification and a one-time charge for tracking services. Borrower also shall be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense, pursuant to Section 7 below. Lender is under no obligation to purchase any particular type or amount of coverage Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance coverage that Borrower could have obtained

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage not otherwise required by Lender, such as credit life and/or disability insurance or earthquake or other hazard insurance for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee, and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

If the Property is a unit in a condominium, cooperative or planned unit development (the "Project") and the Project is covered by a master or blanket policy maintained by the Project's owners association, in the event of a distribution of any hazard insurance proceeds, including without limitation any earthquake or special hazards insurance whether or not such coverage was specifically required by Lender, in lieu of restoration or repair following a loss to the Property and/or the Project, any proceeds payable to Borrower and/or Lender are hereby assigned and shall be paid to Lender for application to sums secured by this Security Instrument, with any excess paid to Borrower. Borrower shall take such actions as may be reasonable to insure that the Project's owners association maintains a public liability insurance policy acceptable to Lender.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in

06  0635926

EXHIBIT B to Shulman Decl. iso
Oppn for Motion for Remand - Page 28

0032302911

its sole and absolute discretion regardless of any impairment or lack of impairment of any security, as follows: (a) to the extent allowed by applicable law, to the sums secured by this Security Instrument in a manner that Lender determines and/or (b) to restoration or repair of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender. During any repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or applicable law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 17 or otherwise, Borrower hereby assigns to Lender (1) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (2) any other of Borrower's rights (other than the right to any refund or unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

If any insurance proceeds are used to reduce the amount of principal owing to Lender under the Note, that use will not delay the due date or change the amount of regularly scheduled payments under the Note, unless Lender and Borrower agree to such delay or change in writing

**6. Preservation and Maintenance of Property; Assignment of Rights for Injury to Property.** Borrower shall keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations, not commit waste or permit impairment or deterioration of the Property, comply with the provisions of any lease if this Security Instrument is on a leasehold, and, if this Security Instrument is on a unit in a Project, (a) perform all of Borrower's obligations under the declaration or covenants creating or governing the Project, the by-laws and regulations of the Project, and constituent documents, and (b) pay when due all dues, fees, assessments and other charges that are imposed on Borrower or the Property by the condominium association, homeowners association or similar organization.

An **assignment** is a transfer of rights to another. Borrower may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action

SD823F (08 15 01/1-01) L231                    Page 6                    CA
REV. (08.01.03/2-03)

06 0635926

EXHIBIT B to Shulman Decl. iso
Oppn for Motion for Remand - Page 29

0032302911

may include an action for breach of contract, fraud, concealment of a material fact or for intentional or negligent acts. Borrower assigns these rights, and any proceeds arising from these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to sums secured by this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights. At the request of Lender, Borrower will sign any further assignments or other documents that may be necessary to enforce this assignment.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or if any action or proceeding is commenced which might materially affect Lender's interest in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation, or to enforce laws or ordinances), or if Borrower abandons the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument. Lender's actions may include, without limitation, appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Section 5 above (such insurance may cost more and provide less coverage than the insurance Borrower might purchase), and paying any sums secured by a lien which has priority over this Security Instrument. Any amounts disbursed by Lender under this Section 7 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment. Nothing contained in this Section 7 shall require Lender to incur any expense or take any action hereunder.

Lender also may charge Borrower fees for services performed in connection with Borrower's default for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by applicable law.

If Lender required mortgage insurance as a condition of making the loan, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

In the event Borrower is subject of a bankruptcy proceeding and delinquent amounts owing under the Note and/or this Security Agreement are to be paid according to a plan requiring approval of the bankruptcy court, Borrower agrees that such bankruptcy plan shall provide for interest on all delinquent amounts being paid through the plan (including, without limitation, principal, interest or periodic finance charges, fees and charges under the Note, and Lender advances, fees and charges under this Security Instrument) at the then current rate of interest provided in the Note.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause for the inspection.

06 0635926

EXHIBIT B to Shulman Decl. iso
Oppn for Motion for Remand - Page 30

3/24/06

0032302911

9. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Security Instrument.

10. **Borrower Not Released; Forbearance By Lender Not a Waiver; No Offset.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

11. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of Section 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Security Instrument, but does not execute the Note, (a) is co-signing this Security Instrument only to grant and convey that Borrower's interest in the Property under the terms of this Security Instrument, (b) is not personally liable on the Note or under this Security Instrument, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Security Instrument or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Security Instrument as to that Borrower's interest in the Property.

12. **Notice; Notice of Grievance.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing such notice by first class mail addressed to Borrower at the Property Address or at such other single address as Borrower may designate by notice to Lender as provided herein, and (b) except as permitted below for changes of address, any notice to Lender shall be given by first class mail to Lender's address stated herein or to such other single address as Lender may designate by notice to Borrower as provided herein. Borrower may give notice to Lender of a change of Borrower's address in writing or by calling Lender's customer service telephone number provided on Borrower's billing statement. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security

06  0635986

Exhibit B to Shulman Decl. iso
Oppn for Motion for Remand - Page 31

3/24/06

0032302911

Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with this Section 12) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If applicable law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 16 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 12

**13. Governing Law; Severability; Loan Charges.** This Security Instrument shall be governed by federal law, rules, and regulations, including those for federally chartered savings institutions ("Federal Law") and, to the extent federal law does not apply, by the law of the jurisdiction in which the Property is located In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Security Instrument and the Note are declared to be severable. As used herein, "costs", "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

If a law which sets maximum loan charges is finally interpreted so that such law is applicable to Lender and that the interest or other loan charges collected or to be collected in connection with the Note or the Security Instrument exceed the permitted limits, then. (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge

**14. Borrower's Copy; Modification; Clerical Errors; Replacement Documents.** Borrower shall be furnished a conformed copy of the Note and of this Security Instrument at the time of execution or after recordation hereof. The Note and/or this Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender. In the event Lender at any time discovers that the Note and/or this Security Instrument contains an error caused by a clerical mistake or calculation, computer, printing or similar error, Borrower agrees to reexecute the document(s) containing the error and to hold Lender harmless for any such error If any document evidencing this loan is lost, stolen, mutilated or destroyed, and Lender delivers a signed indemnification in Borrower's favor, then Borrower agrees to sign and deliver to Lender a replacement document identical in form and content which will have the effect of the original for all purposes

06   0635926   Exhibit B to Shulman Decl. iso
Oppn for Motion for Remand - Page 32

0032302911

**15. Borrower's Loan Application.** Borrower shall be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note.

Lender extended Borrower this loan in reliance upon Borrower's representation in the loan application that Borrower intends to occupy the Property as Borrower's principal residence Lender may have provided Borrower more favorable loan terms, such as a lower interest rate in the Note or a higher loan-to-value, than otherwise would have been made available in the absence of Borrower's representation. Borrower agrees to occupy, establish and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and to continue to occupy the Property as Borrower's principal residence for at least one year thereafter, unless extenuating circumstances exist which are beyond Borrower's control

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred), Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument However, this option shall not be exercised by Lender if exercise is prohibited by federal law

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**17. Acceleration; Remedies.** Borrower will be in default if (a) the full minimum payment due under the Note, or any other payment required by the Note or this Security Instrument, is not made when it is due; (b) Borrower has engaged in fraud or made a material misrepresentation at any time in connection with the equity account evidenced by the Note; (c) Borrower takes any action or fails to take any action that adversely affects the Property or Lender's rights in the Property. If a default occurs (other than under Section 16 unless otherwise required by applicable law), Lender shall give notice to Borrower prior to acceleration. The notice shall specify: (1) the default; (2) the action required to cure such default, (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such default must be cured, and (4) that failure to cure such default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Security Instrument to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this Section 17, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

06 0635926

3/24/06

**0032302911**

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which the Property or some part thereof is located. Lender or Trustee shall mail copies of such notice in the manner prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the lapse of such time as may be required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees and costs of title evidence; (b) to all sums secured by this Security Instrument; and (c) the excess, if any, to the person or persons legally entitled thereto.

**18. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Security Instrument due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Security Instrument discontinued at any time prior to five days before sale of the Property pursuant to the power of sale contained in this Security Instrument or at any time prior to entry of a judgment enforcing this Security Instrument if: (a) Borrower pays Lender all sums which would be then due under this Security Instrument and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Security Instrument, and in enforcing Lender's and Trustee's remedies as provided in Section 17 hereof, including, but not limited to, reasonable attorneys' fees; and (c) Borrower takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unimpaired. Upon such payment and cure by Borrower, this Security Instrument and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred. However, the right to reinstate shall not apply in the case of acceleration under Section 16.

**19. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, and to the extent permitted by applicable law, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under Section 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under Section 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property, including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, maintenance and repairs of the Property, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Security Instrument. Lender and the receiver shall be liable to account only for those rents actually received.

**06  0635926**

EXHIBIT B to Shulman Decl. iso
Oppn for Motion for Remand - Page 34

0032302911

13

**20. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee Trustee shall reconvey the Property without warranty to Borrower or other person(s) legally entitled to it. Borrower or such other person(s) will pay all recordation costs Lender also may charge Borrower or such other person(s) a **FEE OF $ 65.00** for reconveying the Property, but only if the fee is paid to a third party (including the Trustee) for services rendered and the charging of the fee is permitted, whether expressly or by lack of express prohibition, under applicable law. If the fee charged does not exceed any maximum fee set by applicable law, the fee is conclusively presumed to be reasonable.

**21. Substitute Trustee.** Lender, at Lender's option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county where the Property is located The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Instrument is recorded and the name and address of the successor trustee. The successor trustee shall, without conveyance of the Property, succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**22. Statement of Obligations.** Lender may collect a fee of $60.00 for furnishing a statement of obligation, payoff demand statement, or any similar statement. Lender will deliver such statement by first class mail. If Lender is requested by Borrower or Borrower's agent to deliver such statement by facsimile transmission, Lender may collect a special handling charge of $10 for each such delivery and need not send a copy of such statement by first class mail.

06 0635926

EXHIBIT B to Shulman Decl. iso
Oppn for Motion for Remand - Page 35

3/24/06

0032302911

**23. ( X ) Quick Qualifying Loan.** Borrower applied for this loan under Lender's "Quick Qualifying" loan program. Borrower acknowledges that Lender relied upon certain statements of fact made by Borrower in approving the loan without requiring full documentation from Borrower and certain information verifications from third parties, enabling Borrower to obtain this loan rapidly. These statements included, but are not limited to, Borrower's certification that (a) except for any loan made by Lender concurrently with this loan, Borrower has no other "Quick Qualifying" loan with Lender, and (b) there are no undisclosed financial arrangements circumventing the terms of this loan transaction, including, but not limited to, unauthorized secondary financing, sales price adjustments, equity exchanges, credits to down payments or payments made outside escrow, or illusory transfers of title Borrower agrees that Lender may deem Borrower to be in material breach of this section if any secondary financing is obtained, or an escrow is opened, on the Property within six months of the date of this Security Instrument Borrower shall be in default if any material statements of fact or any of the above certifications were false or misleading, or if Borrower is in material breach of this Section.

Notwithstanding anything to the contrary in the Note or this Security Instrument, in the event of Borrower's default under this Section, Lender, at its option, may (1) accelerate the loan in accordance with Section 16 without Borrower having the right of reinstatement under Section 18, or (2) increase the applicable interest rate under the Note by two percentage points (2.00%) for the remaining term of the Note (but not to exceed any lifetime interest rate cap or any maximum rate allowed by applicable law) and make corresponding changes to Borrower's periodic payment amount in order to amortize the loan according to the Note.

**24. (   ) Affordable Housing Program.** The obligation evidenced by the Note is the repayment of down payment and/or closing cost assistance provided to Borrower through a Federal Home Loan Bank's Affordable Housing Program. Notwithstanding anything to the contrary in this Security Instrument, this Security Instrument may be subordinate to more than one instrument and interest does not accrue on down payment and/or closing cost assistance amounts. In the event of any conflict between the provisions of the Note and this Security Instrument, the Note provision shall prevail.

( X ) VALUE INDICATES THAT THE PARAGRAPH APPLIES.

THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.

06  0635926

0032302911

IN WITNESS WHEREOF, Borrower has executed this Security Instrument.

(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

*15*

BORROWER(S)

_____  (Seal)
H JAMES TAPIA

_____  (Seal)

_____  (Seal)

_____  (Seal)

_____  (Seal)

_____  (Seal)

ATTACH  INDIVIDUAL  NOTARY ACKNOWLEDGEMENT

06  0635926

EXHIBIT B to Shulman Decl. iso
Oppn for Motion for Remand - Page 37

STATE OF _CALIFORNIA_

COUNTY OF _RIVERSIDE_

On _MARCH 17, 2006_ before

Me, _RONALD M. FORNO, NOTARY PUBLIC_  Notary Public

Personally
Appeard _H. JAMES TAPIA_

~~Personally known to me~~ (or proved to me on the basis of satisfactory evidence to be the person(s̶) whose name(s̶) is/a̶r̶e̶ subscribed to the within instrument and acknowledged to me that he/s̶h̶e̶ ̶t̶h̶e̶y̶ executed the same in his/h̶e̶r̶/̶t̶h̶e̶i̶r̶ authorized capacity (i̶e̶s̶), and that by his/h̶e̶r̶/̶t̶h̶e̶i̶r̶ signature(s̶) on the instrument the person(s̶), or the entity upon behalf of which the person(s̶) acted. executed the instrument.

WITNESS my hand and official seal

_Ronald M. Forno_
Signature of Notary Public

RONALD M FORNO
COMM. # 1458695
Notary Public-California
Riverside County
My Comm. Expires
JANUARY 23, 2008

(This area for notarial seal)

16

3/24/06   Order No. 2166037 - 907268

Loan #   32302911

Borrower· H  James Tapia

**EXHIBIT A**

17

LEGAL DESCRIPTION

Parcel 1

Lot(s) 46 of Tract No  30704, in the City of San Dimas, County of Los Angeles, State of California, as per map recorded in Book 834, Page(s) 90 and 92 inclusive of maps, in the Office of the County Recorder of said County.

Parcel 2:

A non-exclusive easement over Lots 67, 68, and 69 (The Common Areas) of Tract 30704, Lot 22 of Tract 31499, Lots 10, 11, 12, 13, 14, 15, 111, 112, 113, 114, and 115 (The Common Areas) of Tract 31409 and Lots 99, 100, 101, 102 and 103 (The Common Areas) of Tract 28196, for ingress, egress and the uses and purposes set forth in the Declaration of Covenants, Conditions and Restrictions Recorded September 26, 1972 as Instrument No. 2152, an any amendments and Modification thereof.

Excepting Therefrom all oil, gas, minerals and other hydrocarbon substances below a depth of 500 feet, without rights of surface entry, as reserved in Instruments of Record.

Assessor's Parcel No: 8382-010-063

**06  0635926**

EXHIBIT C

This page is part of your document - DO NOT DISCARD



**20101140426**



Pages:
0004

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

08/17/10 AT 08:00AM

| | |
|---|---|
| FEES: | 24.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 24.00 |



**LEADSHEET**



201008170120009

00002816567



002834842

SEQ:
23

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

t35

EXHIBIT C to Shulman Decl. iso
Oppn for Motion for Remand - Page 40

RECORDING REQUESTED BY

08/17/2010

*20101140426*

WHEN RECORDED MAIL TO

**REGIONAL TRUSTEE SERVICES CORPORATION**
616 1st Avenue, Suite 500
Seattle, WA 98104

Trustee's Sale No:     05-FWA-98998

APN#          8382-010-063
Address       746 SMOKEWOOD LANE
              SAN DIMAS, CA  91773

**\*FWA989980153000000\***

NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

## IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION**, and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).  This amount is $3,175.29 as of 8/16/2010, and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage.  If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing.  In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay.  You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made.  However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the Notice of Sale is posted (which may be not earlier than the end of the three-month period stated above) to, among other things (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Pursuant to California Civil Code Section 2923.5, the mortgagee, beneficiary, or authorized agent has contacted the borrower, tried with due diligence to contact the borrower as required by this section, or the borrower has surrendered the property to the mortgagee, trustee, beneficiary, or

Page 1 of 2

EXHIBIT C to Shulman Decl. iso
Oppn for Motion for Remand - Page 41

3

authorized agent OR the undersigned certifies that the compliance with Civil Code Section 2923.5 was made at least thirty (30) days prior to the date of this Notice of Default and Election to Sell Under Deed of Trust.

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure or if your property is in foreclosure for any other reason, contact:

**WACHOVIA MORTGAGE, FSB**
**C/O REGIONAL SERVICE CORPORATION**
**616 1st Avenue, Suite 500**
**Seattle, WA 98104**
**(206) 340-2550**

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

Remember,  YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN that REGIONAL SERVICE CORPORATION, is either the duly appointed Trustee, the substitute Trustee or acting as agent for the Beneficiary under a Deed of Trust dated 3/15/2006, executed by H JAMES TAPIA, AN UNMARRIED MAN, as Trustor, to secure obligations in favor of World Savings Bank, FSB, a Federal Savings Bank, its Successors and/or Assignees, as Beneficiary, recorded 3/24/2006 , as Instrument No 06 0635926, and rerecorded as Instrument No. 20071006549, of Official Records in the office of the Recorder of LOS ANGELES County, CALIFORNIA, as more fully described on said deed of trust including one note(s) for the sum of $30,000.00  That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred as follows·

> FAILURE TO PAY INSTALLMENTS OF PRINCIPAL, VARIABLE INTEREST, IMPOUNDS AND LATE CHARGES WHICH BECAME DUE 11/15/2009 TOGETHER WITH ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL, INTEREST, IMPOUNDS, LATE CHARGES, FORECLOSURE FEES AND EXPENSES, ANY ADVANCES WHICH MAY HEREAFTER BE MADE; ALL OBLIGATIONS AND INDEBTEDNESSES AS THEY BECOME DUE; AND ANY INSTALLMENTS ALREADY MADE, THAT AT A LATER DATE PROVE TO BE INVALID.

That by reason thereof, the present beneficiary under such Deed of Trust, has executed and delivered to said Trustee, a written Declaration and Demand for Sale, and has deposited with said Trustee, such Deed of Trust and all the documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby

Dated:  8/16/2010                          Regional Service Corporation, Trustee
                                            By LPS DEFAULT TITLE & CLOSING,
                                            As agent

                                            By _____
                                            Menghong But

Page 2 of 2                          CA NOD

EXHIBIT C to Shulman Decl. iso
Oppn for Motion for Remand - Page 42

(Page 1 of 1)

4

Wachovia Mortgage
P.O. Box 659558
San Antonio, TX 78265-9558





H James Tapia

### Declaration of Wells Fargo Bank, N.A.

As required by California Civil Code Section 2923.5, I, 
an officer of Wells Fargo Bank, N.A., declare as follows:

Regarding H James Tapia (hereinafter referred to as
"borrower"), Wells Fargo Bank, N.A., has met the requirement of
California Civil Code Section 2923.5 as indicated below.

( ) Wells Fargo Bank, N.A., has contacted the borrower as set
    forth in California Civil Code Section 2923.5(a)(2).

(x) Wells Fargo Bank, N.A., has tried with due diligence, as
    prescribed by California Civil Code Section 2923.5(g), to
    contact the borrower.

The undersigned authorizes the trustee, foreclosure agent and/or their
authorized agent to sign, on behalf of the beneficiary/authorized agent,
the Notice of Default containing the declaration required pursuant to
Civil Code 2923.5.

I certify (or declare) under penalty of perjury under the laws of the
State of California that the foregoing is true and correct.

8/10/10
_____          _____
Date                             By:
                                 Title: Vice President Loan Documentation

FP006 012 VPR

Wachovia Mortgage is a division of Wells Fargo Bank, N.A.

EXHIBIT C to Shulman Decl. iso
Oppn for Motion for Remand - Page 43

EXHIBIT D



This page is part of your document - DO NOT DISCARD

## 20111106254



Pages:
0002

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**08/17/11 AT 08:00AM**

| | |
|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |



LEADSHEET



201108170230004

00004544032



003454356

SEQ:
14

DAR - Title Company (Hard Copy)



THIS FORM IS NOT TO BE DUPLICATED



t35
EXHIBIT D to Shulman Decl. iso
Oppn for Motion for Remand - Page 44

RECORDING REQUESTED BY

WHEN RECORDED MAIL TO

**REGIONAL TRUSTEE SERVICES CORPORATION**
616 1st Avenue, Suite 500
Seattle, WA 98104

Trustee's Sale No:     05-FWA-98998

100484790



**NOTICE OF RESCISSION**
**OF**
**NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST**

**WHEREAS,** REGIONAL SERVICE CORPORATION, is the duly appointed Trustee under a Deed of Trust dated 3/15/2006, executed by H JAMES TAPIA, AN UNMARRIED MAN, as Trustor, to secure obligations in favor of World Savings Bank, FSB, a Federal Savings Bank, its Successors and/or Assignees, as Beneficiary, recorded 3/24/2006, as Instrument No 06 0635926 rerecorded under Instrument No 20062793081,, Official Records in the office of the Recorder of LOS ANGELES County, CALIFORNIA, as more fully described on said deed of trust, and

**WHEREAS,** a written Notice of Default and Election to sell under Deed of Trust was recorded on 8/17/2010 under Recording No 10-1140426, of Official Records in the office of the Recorder of LOS ANGELES County, CALIFORNIA,

NOW, THEREFORE, NOTICE IS HEREBY GIVEN that the Beneficiary and/or the Trustee does hereby rescind, cancel and withdraw said Notice of Default and Election to Sell under Deed of Trust and said Deed of Trust and all obligations secured thereby are hereby reinstated and shall remain in full force as if said Notice of Default had not been made and given.

Dated.  8/5/2011

REGIONAL SERVICE CORPORATION, Trustee

By _Marilee Hakkinen_
     MARILEE HAKKINEN, AUTHORIZED AGENT

CA RESCISSION

EXHIBIT E

 

**This page is part of your document - DO NOT DISCARD**



## 20121469505

Pages:
0005

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**09/28/12 AT 08:00AM**

| | |
|---|---|
| FEES: | 27.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 27.00 |





**L E A D S H E E T**



**201209281000006**

**00006519162**



**004317677**

**SEQ:**
**09**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**



E53609

**t35**

Recording requested by:
**LSI Title Company**

When Recorded Mail To:
**NDEx West, L.L.C.**
**15000 Surveyor Boulevard, Suite 500**
**Addison, Texas 75001-9013**

APN #: 8382-010-063
Property Address:
**746 SMOKEWOOD LN**
**SAN DIMAS, CALIFORNIA 91773**

DFF20120015003092

09/28/2012
*20121469505*

Space above this line for Recorder's use only

Trustee Sale No. : **20120015003092**   Title Order No.: **120324820**

# IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER
## DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this Notice of Default may be recorded (which date of recordation appears on this notice).

This amount is $14,647.26 as of 09/26/2012 and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things. (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor

FCUS_NoticeOfDefault.rpt - Record - (10/17/2011) - Ver-33                    Page 1 of 3

EXHIBIT E to Shulman Decl. iso
Oppn for Motion for Remand - Page 47

IMPORTANT NOTICE
NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

Trustee Sale No. : 20120015003092          Title Order No.: 120324820

permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**WELLS FARGO HOME MORTGAGE, A DIVISION OF WELLS FARGO BANK, N.A.**
c/o NDEX WEST, LLC
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013
(866) 795-1852

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.
Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

## REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN THAT: NDEX WEST, LLC is the original Trustee, duly appointed Substituted Trustee, or acting as Agent for the Trustee or Beneficiary under a Deed of Trust dated 07/26/2005, executed by H. JAMES TAPIA, as Trustor, to secure obligations in favor of WORLD SAVINGS BANK, FSB, as Beneficiary Recorded on 08/02/2005 as Instrument No. 05 1830162 of official records in the Office of the Recorder of LOS ANGELES County, California, as more fully described on said Deed of Trust.    Including a Note(s)/ Unconditional Guaranty which had a principal amount of $273,350.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the Beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of:

THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE ON 12/1/2011 AND ALL SUBSEQUENT INSTALLMENTS, TOGETHER WITH LATE CHARGES AS SET FORTH IN SAID NOTE AND DEED OF TRUST, ADVANCES, ASSESSMENTS, FEES, AND/OR TRUSTEE FEES, IF ANY.

NOTHING IN THIS NOTICE SHALL BE CONSTRUED AS A WAIVER OF ANY FEES OWING TO THE BENEFICIARY UNDER THE DEED OF TRUST, PURSUANT TO THE TERMS OF THE LOAN DOCUMENTS.

EXHIBIT E to Shulman Decl. iso
Oppn for Motion for Remand - Page 48

**IMPORTANT NOTICE**

**NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST**

Trustee Sale No. : 20120015003092          Title Order No.: 120324820

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said agent, a written Declaration of Default and Demand for same, and has deposited with said agent such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

DATED: 09/26/2012

NDEX WEST, LLC as Agent for Beneficiary

By:

Meriel Lee

# DECLARATION OF COMPLIANCE

*(California Civil Code Section 2923.5(b))*

Wells Fargo Bank, N.A.
3476 Stateview Blvd.
Fort Mill, SC 29715

Borrower: H JAMES TAPIA
Co Borrower:
Property Address: 746 SMOKEWOOD LN
SAN DIMAS    CA    91773

The undersigned mortgagee, beneficiary or authorized agent (collectively, the "Beneficiary") represents and declares that [indicate "X" in the applicable box]:

☐ The Beneficiary has contacted the borrower to discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure in compliance with California Civil Code Section 2923.5. Thirty days or more have elapsed since the initial contact with the borrower.

☒ The Beneficiary tried with due diligence but was unable to contact the borrower to discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure as required by California Civil Code Section 2923.5. Thirty days or more have elapsed since these due diligence efforts were completed.

☐ The mortgagee, beneficiary or authorized agent was not required to comply with California Civil Code Section 2923.5 because:

    ☐ The real property is not "owner-occupied" residential real property as defined by the statute.

    ☐ The deed of trust was not recorded between January 1, 2003 and December 31, 2007.

    ☐ The borrower has surrendered the property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, trustee, beneficiary or authorized agent.

    ☐ The borrower has contracted with someone whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their loan obligations.

    ☐ The borrower has filed for bankruptcy under Chapter 7, 11, 12 or 13 of Title 11 of the United States Code, and the bankruptcy court has not entered an order closing or dismissing the bankruptcy case or granting relief from stay.

Dated: __7/27/12_____

                              *Jeffrey Joplin*
                              Wells Fargo Bank, N.A.

                              __Jeffrey Joplin_____
                              VP of Loan Documentation

EXHIBIT F



**This page is part of your document - DO NOT DISCARD**

# 20150351089



**Pages: 0003**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**04/01/15 AT 08:00AM**

| | |
|---|---|
| FEES: | 28.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 28.00 |



**L E A D S H E E T**



201504010240014

00010357526



006730855

**SEQ:
21**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**                1212

E464798

Recording requested by:
**LSI Title Company**

When Recorded Mail To:
**NDEx West, L.L.C.**
**15000 Surveyor Boulevard, Suite 500**
**Addison, Texas 75001-9013**
**(866) 795-1852**

APN #: 8382-010-063
Property Address:
**746 SMOKEWOOD LN**
**SAN DIMAS, CALIFORNIA 91773**


NOTS20120015003092

04/01/2015
*20150351089*

Space above this line for Recorder's use only

Trustee Sale No. : 20120015003092          Title Order No.: 120324820          FHA/VA/PMI No.:

# NOTICE OF TRUSTEE'S SALE

<u>**ATTENTION RECORDER**</u>**: THE FOLLOWING REFERENCE TO AN ATTACHED SUMMARY APPLIES ONLY TO COPIES PROVIDED TO THE TRUSTOR, NOT TO THIS RECORDED ORIGINAL NOTICE.**

### NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED

注：本文件包含一个信息摘要

참고사항: 본 첨부 문서에 정보 요약서가 있습니다

### NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
### TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
### LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI
### LIỆU NÀY

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 07/26/2005.   UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.   IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

**NDEx West, L.L.C.,** as duly appointed Trustee under and pursuant to Deed of Trust **Recorded on 08/02/2005 as Instrument No. 05 1830162** of official records in the office of the County Recorder of **LOS ANGELES** County, State of CALIFORNIA.
**EXECUTED BY:        H. JAMES TAPIA,**
WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK/CASH EQUIVALENT or other form of payment authorized by California Civil Code 2924h(b), (payable at time of sale in lawful money of the United States).
**DATE OF SALE:        04/24/2015          TIME OF SALE:        10:00 AM**
**PLACE OF SALE:        BEHIND THE FOUNTAIN LOCATED IN CIVIC CENTER PLAZA,   400 CIVIC CENTER PLAZA, POMONA CA.**
**STREET ADDRESS** and other common designation, if any, of the real property described above is purported to be:
                    **746 SMOKEWOOD LN, SAN DIMAS, CALIFORNIA 91773**
**APN#:              8382-010-063**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of

FCUS_NoticeOfTrusteeSale.rpt - Record - 05/29/2013 - Ver-38

Page 1 of 2

Trustee Sale No. : 20120015003092          Title Order No.: 120324820          FHA/VA/PMI No.:

3

Trust,  with interest thereon, as provided in said note(s), advances, under the terms of  said Deed of Trust, fees, charges and expenses of the Trustee and of  the trusts created by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is **$331,945.12**. The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located.

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call 916-939-0772 for information regarding the trustee's sale or visit this Internet Web site www.nationwideposting.com for information regarding the sale of this property, using the file number assigned to this case 20120015003092. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

FOR TRUSTEE SALE INFORMATION PLEASE CALL:

| | |
|---|---|
| **NATIONWIDE POSTING & PUBLICATION A DIVISION** | **NDEx West, L.L.C. MAY BE ACTING AS A** |
| **OF FIRST AMERICAN TITLE INSURANCE COMPANY** | **DEBT COLLECTOR ATTEMPTING TO** |
| **5005 WINDPLAY DRIVE, SUITE 1** | **COLLECT A DEBT.  ANY INFORMATION** |
| **EL DORADO HILLS, CA 95762-9334** | **OBTAINED WILL BE USED FOR THAT** |
| **916-939-0772** | **PURPOSE.** |
| **www.nationwideposting.com** | |

**NDEx West, L.L.C. as Trustee**

_____          Dated: **03/30/2015**
BY: Jesus Angulo          **Jesus Angulo**
                         **Operations Manager**

EXHIBIT G

## California Secretary of State Alex Padilla

*compthian good   privacy   All people Liberty Speak Conscience without discrimination.*

Secretary of State Main Website     Business Programs     Notary & Authentications     Elections     Campaign & Lobbying

**Business Entities (BE)**

Online Services
 - E-File Statements of
   Information for
   Corporations
 - Business Search
 - Processing Times
 - Disclosure Search

**Main Page**

**Service Options**

**Name Availability**

**Forms, Samples & Fees**

**Statements of Information**
 (annual/biennial reports)

**Filing Tips**

**Information Requests**
 (certificates, copies &
  status reports)

**Service of Process**

**FAQs**

**Contact Information**

Resources
 - Business Resources
 - Tax Information
 - Starting A Business

Customer Alerts
 - Business Identity Theft
 - Misleading Business
   Solicitations

# Business Search

This search provides access to domestic stock, domestic nonprofit and qualified foreign corporations, limited liability company and limited partnership information of record with the California Secretary of State. For additional information about entity addresses and the names and addresses of the principals of the entity, order a copy of the last complete Statement of Information (for corporations and limited liability companies) or formation and amendment documents (for limited partnerships). For information on ordering certificates, copies of documents and/or status reports or to request a more extensive search, refer to **Information Requests**.

Please note: This search is not intended to serve as a name availability search. For information on checking or reserving a name, refer to **Name Availability**.

To conduct a search:

 - Select the applicable search type.
 - Enter the entity name or number you wish to search. Note: If entering the entity number of a corporation, the number must begin with the letter C.
 - Select the **Search** button.
 - For help with searching an entity name or number, refer to **Search Tips**.

**Search Type:**
◉ Corporation Name  ○ Limited Liability Company/Limited Partnership Name  ○ Entity Number

**Entity Name:** [Regional Trustee Services]   [ Search ]

**Disclaimer:** This tool allows you to search the Secretary of State's California Business Search database for abstracts of information for domestic stock, domestic nonprofit and qualified foreign corporations, limited liability companies and limited partnerships that have filed with this office. This search tool groups corporations separately from limited liability companies and limited partnerships and returns all entities for the search criteria in the respective groups regardless of the current status.

Although every attempt has been made to ensure that the information contained in the database is accurate, the Secretary of State's office is not responsible for any loss, consequence, or damage resulting directly or indirectly from reliance on the accuracy, reliability, or timeliness of the information that is provided. All such information is provided "as is." For information on ordering copies of the official business entity records for a particular entity, please refer to **Information Requests**.

**Privacy Statement | Free Document Readers**
Copyright © 2015   California Secretary of State

EXHIBIT G to Shulman Decl. iso
Oppn for Motion for Remand - Page 54
6/22/2015

comman good    privacy    All people Liberty Speak without discrimination
## California Secretary of State Alex Padilla

Secretary of State Main Website    Business Programs    Notary & Authentications    Elections    Campaign & Lobbying

**Business Entities (BE)**

Online Services
 - E-File Statements of
   Information for
   Corporations
 - Business Search
 - Processing Times
 - Disclosure Search

**Main Page**

**Service Options**

**Name Availability**

**Forms, Samples & Fees**

**Statements of Information**
 (annual/biennial reports)

**Filing Tips**

**Information Requests**
 (certificates, copies &
 status reports)

**Service of Process**

**FAQs**

**Contact Information**

Resources
 - Business Resources
 - Tax Information
 - Starting A Business

Customer Alerts
 - Business Identity Theft
 - Misleading Business
   Solicitations

## Business Search - Results

Data is updated to the California Business Search on Wednesday and Saturday mornings. Results reflect work processed through Friday, June 19, 2015. Please refer to **Processing Times** for the received dates of filings currently being processed. The data provided is not a complete or certified record of an entity.

* *Select an entity name below to view additional information.* Results are listed alphabetically in ascending order by entity name.
* For information on checking or reserving a name, refer to **Name Availability**.
* For information on ordering certificates, copies of documents and/or status reports or to request a more extensive search, refer to **Information Requests**.
* For help with searching an entity name, refer to **Search Tips**.
* For descriptions of the various fields and status types, refer to **Field Descriptions and Status Definitions**.

Results of search for " REGIONAL TRUSTEE SERVICES " returned no entity records.

Record not found.

**Modify Search**    **New Search**

**Privacy Statement** | **Free Document Readers**

Copyright © 2015    California Secretary of State

EXHIBIT G to Shulman Decl. iso
Oppn for Motion for Remand - Page 55
6/22/2015

*comfort good* *privacy* **All people** *Liberty* **Speak** *without discrimination*
*Conscience*

# California Secretary of State Alex Padilla

Secretary of State Main Website    Business Programs   Notary & Authentications   Elections   Campaign & Lobbying

**Business Entities (BE)**

Online Services
- E-File Statements of
  Information for
  Corporations
- Business Search
- Processing Times
- Disclosure Search

**Main Page**

**Service Options**

**Name Availability**

**Forms, Samples & Fees**

**Statements of Information**
(annual/biennial reports)

**Filing Tips**

**Information Requests**
(certificates, copies &
status reports)

**Service of Process**

**FAQs**

**Contact Information**

Resources
- Business Resources
- Tax Information
- Starting A Business

Customer Alerts
- Business Identity Theft
- Misleading Business
  Solicitations

## Business Search

This search provides access to domestic stock, domestic nonprofit and qualified foreign corporations,
limited liability company and limited partnership information of record with the California Secretary of
State. For additional information about entity addresses and the names and addresses of the principals
of the entity, order a copy of the last complete Statement of Information (for corporations and limited
liability companies) or formation and amendment documents (for limited partnerships). For
information on ordering certificates, copies of documents and/or status reports or to request a more
extensive search, refer to **Information Requests**.

Please note: This search is not intended to serve as a name availability search. For information on
checking or reserving a name, refer to **Name Availability**.

To conduct a search:

- Select the applicable search type.
- Enter the entity name or number you wish to search. Note: If entering the entity number of a
  corporation, the number must begin with the letter C.
- Select the **Search** button.
- For help with searching an entity name or number, refer to **Search Tips**.

**Search Type:**

◉ Corporation Name  ○ Limited Liability Company/Limited Partnership Name  ○ Entity Number

**Entity Name:** [ Regional Trustee Services Corporation ]  [ Search ]

**Disclaimer:** This tool allows you to search the Secretary of State's California Business Search database for abstracts of
information for domestic stock, domestic nonprofit and qualified foreign corporations, limited liability companies and limited
partnerships that have filed with this office. This search tool groups corporations separately from limited liability companies and
limited partnerships and returns all entities for the search criteria in the respective groups regardless of the current status.

Although every attempt has been made to ensure that the information contained in the database is accurate, the Secretary of
State's office is not responsible for any loss, consequence, or damage resulting directly or indirectly from reliance on the
accuracy, reliability, or timeliness of the information that is provided. All such information is provided "as is." For information on
ordering copies of the official business entity records for a particular entity, please refer to **Information Requests**.

Privacy Statement | Free Document Readers
Copyright © 2015   California Secretary of State

http://kepler.sos.ca.gov/

**EXHIBIT G to Shulman Decl. iso
Oppn for Motion for Remand - Page 56**
6/22/2015

Business Search ▾ Business Entities ▾ Business Programs ▾   Page 1 of 1

---

comienza good   *privacy*   *All people Liberty Speak Conscience without discrimination*

# California Secretary of State Alex Padilla

Secretary of State Main Website       Business Programs   Notary & Authentications   Elections   Campaign & Lobbying

---

**Business Entities (BE)**

Online Services
  - **E-File Statements of Information for Corporations**
  - **Business Search**
  - **Processing Times**
  - **Disclosure Search**

**Main Page**

**Service Options**

**Name Availability**

**Forms, Samples & Fees**

**Statements of Information** (annual/biennial reports)

**Filing Tips**

**Information Requests** (certificates, copies & status reports)

**Service of Process**

**FAQs**

**Contact Information**

Resources
  - **Business Resources**
  - **Tax Information**
  - **Starting A Business**

Customer Alerts
  - **Business Identity Theft**
  - **Misleading Business Solicitations**

## Business Search - Results

Data is updated to the California Business Search on Wednesday and Saturday mornings. Results reflect work processed through Friday, June 19, 2015. Please refer to **Processing Times** for the received dates of filings currently being processed. The data provided is not a complete or certified record of an entity.

- *Select an entity name below to view additional information.* Results are listed alphabetically in ascending order by entity name.
- For information on checking or reserving a name, refer to **Name Availability**.
- For information on ordering certificates, copies of documents and/or status reports or to request a more extensive search, refer to **Information Requests**.
- For help with searching an entity name, refer to **Search Tips**.
- For descriptions of the various fields and status types, refer to **Field Descriptions and Status Definitions**.

Results of search for " REGIONAL TRUSTEE SERVICES CORPORATION " returned no entity records.

Record not found.

**Modify Search**   **New Search**

---

**Privacy Statement** | **Free Document Readers**

Copyright © 2015   California Secretary of State

EXHIBIT G to Shulman Decl. iso
Oppn for Motion for Remand - Page 57
6/22/2015

EXHIBIT H



# UNITED STATES OF AMERICA
# The State of Washington
## Secretary of State

CERTIFICATE OF MERGER

I, Kim Wyman, Secretary of State of the State of Washington and custodian of its seal, hereby certify that documents meeting statutory requirements have been filed and processed with the Secretary of State merging the listed "Merging Entities" into:

REGIONAL TRUSTEE SERVICES CORPORATION and Changing name to OLD RTSC CORP.

WA Profit Corporation
UBI: 601-061-176
Filing Date: July 29, 2014

Merging Entities:

Not Qualified in WA    REGIONAL SERVICE CORPORATION



Given under my hand and the Seal of the State of Washington at Olympia, the State Capital

Kim Wyman, Secretary of State

Date Issued:  7/29/2014

FILED

JUL 29 2014

WA SECRETARY OF STATE

**ARTICLES OF MERGER**

**REGIONAL SERVICE CORPORATION**
**INTO**
**REGIONAL TRUSTEE SERVICES CORPORATION**

Pursuant to RCW 23B.11.050, the following Articles of Merger are executed for the purpose of merging Regional Service Corporation, a California corporation (the "***Disappearing Corporation***"), into Regional Trustee Services Corporation, a Washington corporation (the "***Surviving Corporation***").

1.      The Agreement and Plan of Merger is attached hereto as **Exhibit A**.

2.      The Agreement and Plan of Merger was duly approved by the shareholders of the Disappearing Corporation pursuant to pursuant to the applicable laws of the State of California as required by RCW 23B.11.070 and by the shareholders of the Surviving Corporation pursuant to RCW 23B.11.030.

Dated:    July 28          , 2014.

REGIONAL TRUSTEE SERVICES
CORPORATION

By _____
Christopher Rebhuhn
President

32984-0001/LEGAL122859066.1

EXHIBIT A

## AGREEMENT AND PLAN OF MERGER

THIS AGREEMENT AND PLAN OF MERGER ("*Agreement*") is made July ⎯28⎯, 2014 by and between Regional Trustee Services Corporation, a Washington corporation ("*RTSC*") and Regional Service Corporation, a California corporation ("*RSC*"). RTSC and RSC are sometimes collectively referred to in this Agreement as the "*Constituent Corporations.*"

## RECITALS

A.    The authorized capital stock of RTSC consists of 50,000 shares of common stock without par value, of which 17,339 shares are duly issued and outstanding on the date hereof.

B.    The authorized capital stock of RSC consists of 25,000 shares of common stock without par value, of which 1,000 shares are duly issued and outstanding on the date hereof.

C.    RTSC and RSC deem it advisable and in the best interests of the Constituent Corporations and their shareholders that RSC be merged into RTSC (the "*Merger*") as authorized by the laws of the States of California and Washington.

D.    The Constituent Corporations have elected to be treated as S corporations as defined in Section 1362 of the Internal Revenue Code of 1986, as amended, and it is desired that such status be maintained with respect to RTSC after the Merger.

## AGREEMENT

In consideration of the foregoing recitals and of the covenants and agreements hereinafter set forth and for the purpose of prescribing the terms and conditions of the Merger, the parties agree as follows:

1.    **Merger; Effectiveness**

RSC shall be merged into RTSC (hereinafter sometimes called the "*Surviving Corporation*"), pursuant to the applicable provisions of the California Corporations Code and the Washington Business Corporation Act and in accordance with the terms and conditions of this Agreement.

Upon completion of the following events:

(a)    the approval of the plan of merger as stated herein by the Board of Directors of each of the Constituent Corporations,

**EXHIBIT H to Shulman Decl. iso**
**Oppn for Motion for Remand - Page 60**

      (b)    the approval of the plan of merger as stated herein by the holders of at least two-thirds of the voting stock of each of the Constituent Corporations, and

      (c)    the execution by the Surviving Corporation of Articles of Merger incorporating this Agreement and the filing of such Articles of Merger with the Washington Secretary of State and the filing of a copy of such Articles of Merger, certified by the Washington Secretary of State, with the California Secretary of State,

the Merger shall become effective at the close of business on the date of filing of the Articles of Merger with the Washington Secretary of State (the "***Effective Time of the Merger***").

## 2.    Articles of Incorporation

Article I of the Articles of Incorporation of RTSC shall, at the Effective Time of the Merger, be amended to read as follows:

      "The name of the corporation shall be Old RTSC Corp."

and such Articles of Incorporation, as so amended, shall be the Articles of Incorporation of the Surviving Corporation until the same shall be further altered, amended or repealed.

## 3.    Bylaws

The Bylaws of RTSC in effect at the Effective Time of the Merger shall, at the Effective Time of the Merger, be and remain the Bylaws of the Surviving Corporation.

## 4.    Directors and Officers

The directors and officers of RTSC in office at the Effective Time of the Merger shall, at the Effective Time of the Merger, continue as the directors and officers of the Surviving Corporation and shall hold such offices in accordance with and subject to the Articles of Incorporation and Bylaws of the Surviving Corporation, as in effect immediately after the Effective Time of the Merger.

## 5.    Conversion of Shares

At the Effective Time of the Merger, by virtue of the Merger and without any action on the part of the holder of any shares of stock of RTSC or of RSC,

      (a)    the shareholders of RTSC will continue to own the 17,339 shares of stock of the Surviving Corporation which they own on the date hereof; and

      (b)    All of the issued and outstanding shares of capital stock of RSC shall be cancelled, and no consideration shall be delivered in exchange therefor.

**EXHIBIT H to Shulman Decl. iso Oppn for Motion for Remand - Page 61**

6.     **Rights, Duties, Powers, Liabilities, Etc.**

At the Effective Time of the Merger, the separate existence of RSC shall cease, and RSC shall be merged in accordance with the provisions of this Agreement with and into the Surviving Corporation, which shall possess all the properties and assets, and all the rights, privileges, powers, immunities and franchises, of whatever nature and description, and shall be subject to all restrictions, duties and liabilities of each of the Constituent Corporations; and all such things shall be taken and deemed to be transferred to and vested in the Surviving Corporation without further act or deed; and the title to any real estate, or any interest therein, vested by deed or otherwise in either of the Constituent Corporations, shall be vested in the Surviving Corporation without reversion or impairment.  Any claim existing or action or proceeding, whether civil, criminal or administrative, pending by or against either Constituent Corporation, may be prosecuted to judgment or decree as if the Merger had not taken place, and the Surviving Corporation may be substituted in any such action or proceeding.

7.     **Implementation.**

(a)     Each of the Constituent Corporations hereby agrees that at any time or from time to time as and when requested by the Surviving Corporation, or by its successors or assigns, it will so far as it is legally able, execute and deliver, or cause to be executed and delivered in its name by its last acting officers, or by the corresponding officers of the Surviving Corporation, each of whom is hereby irrevocably appointed as attorney-in-fact for such purposes, all such conveyances, assignments, transfers, deeds or other instruments, and will take or cause to be taken such further or other actions as the Surviving Corporation, its successors or assigns, may deem necessary or desirable in order to evidence the transfer, vesting and devolution of any property, right, privilege, power, immunity or franchise to vest or perfect in or confirm to the Surviving Corporation, its successors or assigns, title to and possession of all the property, rights, privileges, powers, immunities, franchises and interests referred to in this Agreement and otherwise to carry out the intent and purposes hereof.

(b)     Each of the Constituent Corporations shall take, or cause to be taken, all action or do, or cause to be done, all things necessary, proper or advisable under the laws of the States of California and Washington to consummate and make effective the Merger.

8.     **Termination**

This Agreement may be terminated for any reason at any time before the filing of Articles of Merger with the Washington Secretary of State (whether before or after approval by the shareholders of the Constituent Corporations, or either of them) by resolution of the Board of Directors of each of the Constituent Corporations.

32984-0001/LEGAL122857789.1

**EXHIBIT H to Shulman Decl. iso Oppn for Motion for Remand - Page 62**

9.     **Amendment**

This Agreement may, to the extent permitted by law, be amended, supplemented or interpreted at any time by action taken by the Board of Directors of each of the Constituent Corporations; provided, however, that this Agreement may not be amended or supplemented after having been approved by the shareholders of a Constituent Corporation except by a vote or consent of shareholders holding two-thirds of the outstanding shares of such Constituent Corporation.

REGIONAL TRUSTEE SERVICES
CORPORATION

By _____
    Christopher Rebhuhn, President

By _____
Name: _CRYSTAL A POOLE_____
Its _SECRETARY_____

REGIONAL SERVICE CORPORATION

By _____
    Christopher Rebhuhn, President

By _____
Name: _CRYSTAL A. POOLE_____
Its _SECRETARY_____

32984-0001/LEGAL122857789.1

**EXHIBIT H to Shulman Decl. iso Oppn for Motion for Remand - Page 63**

EXHIBIT I

**OLD RTSC CORP.**

| | |
|---|---|
| UBI Number | 601061176 |
| Category | REG |
| Profit/Nonprofit | Profit |
| Active/Inactive | Inactive |
| State Of Incorporation | WA |
| WA Filing Date | 12/30/1987 |
| Expiration Date | 12/31/2014 |
| Inactive Date | 04/01/2015 |
| Duration | Perpetual |
| Registered Agent Information | |
| Agent Name | FAIRCHILD RECORD SEARCH, LTD |
| Address | 3400 CAPITOL BLVD SE #101 |
| City | OLYMPIA |
| State | WA |
| ZIP | 98501 |
| Special Address Information | |
| Address | PO BOX 1368 |
| City | OLYMPIA |
| State | WA |
| Zip | 98501 |

**Governing Persons**

| Title | Name | Address |
|---|---|---|
| President,Chairman,Director | REBHUHN, CHRIS | 616 1st AVE #500 SEATTLE, WA 98104 |
| Secretary,Treasurer | POOLE, CRYSTAL | 616 1st AVE #500 SEATTLE, WA 98104 |
| Vice President | KAUFMAN, DEBORAH | 616 1st AVE #500 SEATTLE, WA 98104 |

**EXHIBIT I to Shulman Decl. iso
Oppn for Motion for Remand - Page 64**

EXHIBIT J



Sales List     Laws     Services     About Us     Customer Login     Staff

Convenient and Cost Effective

  

RTS Pacific, Inc.

616 1st Avenue, Suite 500
Seattle, WA 98104
206-340-2550
800-542-2550
FAX:206-292-4930

**Current Mortgage Rates**

30 Year Fixed

15 Year Fixed

5/1 Adjustable

News You Can Use

*Coming Soon....*

Visitors:
**224903**

© 2013 *RTS Pacific, Inc.* All Rights Reserved

Privacy Policy

EXHIBIT J to Shulman Decl. iso
Oppn for Motion for Remand - Page 65

EXHIBIT K

FILED

2015 MAR 27 AM 9: 11

KING COUNTY
SUPERIOR COURT CLERK
SEATTLE. WA

EXPO1

1

2

3

4

5

6

7

8                    SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

9    In the Receivership of:

10   OLD RTSC CORP., a Washington corporation

No. 14-2-21548-7 SEA

ORDER EXTENDING
AUTOMATIC STAY

11

12          THIS MATTER came before the Court upon the Motion to Extend the

13   Automatic Stay ("Motion") filed by Pivotal Solutions, Inc. ("Receiver"), the Court-

14   appointed general receiver in the above-captioned matter.  The Court has reviewed the

15   files and records herein and finds that good cause exists for the requested extension.

16   Now, therefore, it is hereby

17          **ORDERED:**

18          1.     That the Motion is granted;

19          2.     That the automatic stay provided for in RCW § 7.60.110 is hereby

20   extended to October 5, 2015.

21

ORDER EXTENDING AUTOMATIC STAY – Page 1

BUSH STROUT &
KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

ORIGINAL

MAR 2 7 2015

1  DONE IN OPEN COURT this _____ day of _____, 2015. 9:10 AM

2

3  *N. Bradburn-Johnso*
   King County Superior Court Judge/Commissioner

4  NANCY BRADBURN-JOHNSON

5  Presented by:

6  BUSH STROUT & KORNFELD LLP

7

8  By _____
   Christine M. Tobin-Presser, WSBA #27628
9  Attorneys for Pivotal Solutions, Inc.
   General Receiver for Old RTSC Corp.

10

11

12

13

14

15

16

17

18

19

20

21

ORDER EXTENDING AUTOMATIC STAY – Page 2

BUSH STROUT &
KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2091 20141 {c09g71280

**CERTIFICATE OF SERVICE**

I, the undersigned, declare that I am over the age of 18 and am not a party to this action.  I am employed in the City of Pasadena, California; my business address is Anglin, Flewelling, Rasmussen, Campbell & Trytten LLP, 199 S. Los Robles Avenue, Suite 600, Pasadena, California  91101-2459.

On the date below, I served a copy of the foregoing document entitled:

**DECLARATION OF JEREMY E. SHULMAN IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

on the interested parties in said case as follows:

**Served Electronically Via the Court's CM/ECF System**

| | |
|---|---|
| *Attorneys for Plaintiff,* <br> *H. James Tapia* | *Attorneys for Defendant* <br> *NDeX West, LLC,* |
| Julie J. Villalobos, Esq. <br> julie@oaktreelaw.com <br> George C. Huang Esq. <br> george@oaktreelaw.com <br> OAK TREE LAW <br> 10900 183rd Street, Suite 270 <br> Cerritos, CA 90703 <br> T: (562) 356-9957 | F: (800) 976-4187 | Edward A. Treder, Esq. <br> edwardt@bdfgroup.com <br> James T. Lee, Esq. <br> jamesl@bdfgroup.com <br> BARRETT DAFFIN FRAPPIER <br> TREDER & WEISS, LLP <br> 20955 Pathfinder Road, Suite 300 <br> Diamond Bar, CA  91765 <br> T: (626) 915-5714 | F: (626) 915-0289 |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made.  This declaration is executed in Pasadena, California on June 22, 2015.

| | |
|---|---|
| Marianne Mantoen | */s/ Marianne Mantoen* |
| (Type or Print Name) | (Signature of Declarant) |

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP